Good morning, ladies and gentlemen. Our first case for argument this morning is Elizarri v. Cook County Sheriff, Mr. Flaxman. Thank you, Your Honor. May it please the Court. There are several issues that plaintiffs raised in their opening brief. The primary issue, which we strongly urge requires a reversal, concerns the jury instructions and the way the jury instruction on deliberate indifference was argued to the jury by defense counsel. And the way that the district judge overruled the prompt objection to that instruction and allowed the jury to find in favor of the defendants because the plaintiffs had not proved that the defendants intentionally wanted 50,000 prisoners whose property was still being held at the jail to lose their property. Mr. Flaxman, do I understand correctly that this is not actually an instruction issue because the parties agreed on the substantive jury instructions? This is really a closing argument issue. Yes. The instruction issue is about the failure to give the pen bower instruction. That's separate. The instruction, as given, we didn't object to. And as given, it could be improved upon, but it wasn't clearly wrong. It became clearly wrong when it was argued that the instruction required subjective bad faith and the judge overruled the prompt objection to that. The other, there was another objection to the defense closing argument where the defense said that the plaintiffs, you can't fine for the plaintiffs if they didn't bring in 300,000 prisoners to say they lost their property. And we objected to that. The judge sustained that objection and gave a curative instruction on that improper argument. Well, there were a lot of objections in closing on both sides. I can't recall any that were made to my argument, but I'm sure that the record is accurate. And I objected during the defense closing argument when I thought there were things that were being said wrong. And one of the things I objected to was the 300,000 people or the 50,000 people, and the judge got that one right. She sustained the objection and gave a curative instruction. When I objected to the argument about it must show that they intentionally wanted these people to lose their property, the judge thought about it. I think reflected on Eighth Amendment harm cases or medical deliberate indifference cases and says, no, that's overruled. And then allowed the defense to continue to argue in that theme and allow the jury to find against the plaintiffs because we had improved subjective bad faith. We proved due to the light. Well, we had enough evidence of deliberate indifference to go to a jury. And we had it was at least a very close case. And this instruction increased our burden and made it very hard, impossible for us to win. The other issues that we raised in the brief are issues that will come up again if, as we argue, this is a remand. If we were in the district court and promptly raised and requested a Fourth Amendment instruction on failure to safely maintain property or to reasonably maintain the property, the district judge would say, I can't give that instruction. I have to follow the Seventh Circuit until they reverse Lee versus city of Chicago. I can't give a Fourth Amendment instruction about property. And so we're asking that we're flagging that for the court so that the law of the case doesn't prohibit us or that that doesn't have to be a third trial. If the judge, as I would expect, would follow the Seventh Circuit's decision and not give a Fourth Amendment instruction. One of the pieces of evidence of deliberate indifference was the sheriff's confusing instructions to former prisoners about how to get their property back when the sheriff couldn't find it. The sheriff would give them a form, which is in the record saying, go sue the Cook County Department of Corrections in Pro Se Court, and that way you can get compensation. When prisoners would go to Pro Se Court, which is actually the municipal, the small claims court in the municipal division of the Circuit Court of Cook County, they would file papers. The state's attorney, who represents the sheriff then, would come forward and say, you can't sue the Cook County Department of Corrections. It's not a suable entity. You have to sue the sheriff. Sometimes the Pro Se prisoner would get that right. Sometimes the Pro Se prisoner would get that wrong. In one case called Black versus Dart, the Pro Se prisoner got it right. But then the sheriff said, well, you can't sue us because we have immunity. So sorry. And then on appeal, the Illinois appellate court said, that's right. It wasn't raised, but even if it had been, it wasn't properly preserved, but even if it had been properly preserved, you would lose because there's an immunity. That, we thought, was evidence of deliberate indifference. And the jury heard about that from one class member, but should have received an instruction from the court saying, this is the law. You can't go to state court to get compensation. And the sheriff giving people instructions to go to state court is confusing. The other issue which should be explored before a new trial is about this missing database. Exhibit 45, which is a video, begins with a superintendent giving a tour to some sheriff's employees of the property of what the sheriff calls the unclaimed property, which the director of the Department of Corrections referred to in his memo as property that wasn't returned because of processing errors. And the superintendent talks about how the cadets went through all this property and created a database. When we asked for the database, the sheriff and the sheriff's lawyer said, there was no database. We can't find one. It was never created. There was some testimony at trial about the database having been created. But the main reason that we're asking for reversal is what Judge Hamilton corrected me, is the closing argument issue and the failure to give the pentagon instruction. If there are more questions. Actually, I did have a couple of questions about your closing argument issue. Mr. Flaxman, I didn't see in your rebuttal any attempt to respond to what you thought was a misstatement in the paraphrase of the instructions. I didn't know how to do that. I mean, the defense lawyer made a representation. You have to show harm. I objected. The judge said, overruled. The judge instructed this jury after closings. Is that right? That's my recollection. Yeah. This is problematic when people start trying to paraphrase the written instructions. But the judge also gave the standard instruction, didn't she, that in essence the instructions are what I tell you they are rather than what the lawyers tell you they are? That's correct. She also said that in response to one of my objections. And she also sustained a number of your objections to other attempts to paraphrase instructions. That's correct. So if you say that your brief seemed to indicate that the judge had gotten the instructions wrong, but that's not what's going on here. The question is whether a mistaken paraphrase in closing argument requires a new trial, and that's pretty unusual. What's special about this case? What's special is that there was a prompt objection. The objection was overruled, and there was no curative. And there could have been a curative instruction if the judge told the jury, hey, that's correct. He argued that. You have to show that. They intended all these prisoners to lose their property. Well, the key language seemed to be the difference, if I got this right, between purposely and conscious disregard. Is that right? Well, then it goes on. The closing argument continued after that with they need to prove to you that the sheriff's office purposely said. Consciously said. Yeah. We're not going to let this pattern of people not getting their stuff back. We're going to let these hundreds of thousands of people just not get their stuff. That was an argument that was encouraged or allowed because the district judge said it was okay to talk about they purposely took no action. This isn't a case about negligence. The instruction referred to conscious disregard. The closing argument refers to purposely. What's the difference between those two? The way it was argued is that it was transformed into intentionally disregarded, not consciously disregarded. They intentionally wanted harm to be caused to these prisoners. That's the way I think the jury saw it, the way it was argued. And your theory was less than intentional harm but just indifference. To know there's a problem and not to do anything about it. And we certainly had evidence that they knew it was a problem, evidence that they didn't do anything about it. And that's what we think conscious means. And on the Pembauer instruction issue, once the district judge settled the final instructions, where did you object to the refusal to give that instruction? I had objected. I did not. I objected throughout the time we've been discussing jury instructions. I did not once again object after that. And that should not be a waiver because I – you're looking at me as if I'm – it should be a waiver. It should not be a waiver because everybody – it was clear what our position was. It was clear we asked the court to address it. Well, there's a lot of – it looked to me like there's a lot of give and take in the instruction discussions. There's certainly an argument that the instruction given about a policy-making official knowing of the pattern and allowing it to continue, which was agreed, is sufficient to cover that point. And what I didn't see is an objection registered once the judge finally resolved what the instructions were going to be. You did see it, but it's not there. Okay. Thank you. I don't know if you can see that. And that's – I just – in defense, in the Hawkins case, the judge had made rulings in a summary judgment order, which this court said made it not feasible for somebody to object to that, for the plaintiff to object to that during closing arguments. And there was no objection raised, and the court said the jury was confused about the basis for liability. That's – if there are no further questions, thank you. Thank you, Mr. Flaxman. Mr. Power. Thank you. May it please the court, when individuals come into the custody of Cook County Jail, they often arrive in street clothes or have in their possession jewelry, money, cell phones, or other items that could be dangerous or generally impede sound operation of a prison facility. Cook County Jail collects those items and inventories them, and in return gives detainees a prison jumpsuit. This case is not about that collection of personal items, as plaintiffs have repeatedly recognized. What this case is about, however, is the return of that property when detainees are convicted and sent to the Illinois Department of Corrections or released and returned to the public. Defendants do not deny that from 2005 to 2013, many pieces of property were not returned to detainees. However, plaintiffs have failed to establish at trial that property was, in fact, lost or misplaced by Cook County Jail as opposed to the defendants or as to detainees abandoning that property. More importantly, though, during that time, approximately 780,000 individuals passed through Cook County Jail. During that time, the sheriff's office's processes evolved from paper system with receipts to upgraded computer systems to a state-of-the-art conveyor belt system to manage detainee property. The sheriff's office held weekly accountability meetings, hired outside vendors, had internal and external audits, centralized their property room procedures, and spent $1.4 million on that conveyor belt system. That progress, those reasonable measures to prevent loss of detainee property, establishes that the defendants were not deliberately indifferent to the issue of returning property to detainees, as the jury found following a nine-day trial. Indeed, that's a crucial point. All parties agreed that plaintiffs had to prove deliberate indifference by the sheriff's office, and plaintiffs agreed with and helped craft that deliberate indifference instruction that was given to the jury. So with agreed instructions, Mr. Power, why did the county's lawyer keep trying to spin them in closing argument? By rephrasing them, putting them up on the PowerPoint and then rephrasing them, most of which were sustained. This one particular one was not. I don't know if I can speak to the thought process of that. I'm surprised the district judge didn't shut down the closing argument. Well, again, as Your Honor noted, there were objections that were made and were sustained or not sustained, as the case may be. And, again, I think this goes to the point that you brought up earlier, that this case is not about improper instructions but statements during closing arguments. No, but it's about lawyers who agree on instructions, agree with the judge on the instructions, and then try to spin them constantly. And, Your Honor, to the extent that there was spin, that was kind of within the normal bounds of closing argument, trying to explain the jury instructions to the jury. And while plaintiffs now say that defendants used the phrase intentional wrongdoing, that phrase was never uttered during closing arguments. But there was a discussion of purposefully taking no action, which is in line with the deliberate indifference instruction. Again, the court repeatedly warned the jury throughout the course of trial that arguments are not evidence and that the judge will instruct them on the law. The judge did instruct them on the law with instructions that were not objected to. Juries are presumed to follow the instructions given to them. As interpreted by the lawyers? Well, as given to them by the judge, Your Honor. And, again, this is an abusive discretion standard when it comes to statements made by an attorney. And curative instructions were offered about the number of bags lost that needed to be shown. And I believe plaintiffs cited the Hawkins case in terms of overwhelmingly confusing the jury. Again, this was a nine-day trial with 17 witnesses put on. There was a lot of evidence and argument and instructions. To argue that these fleeting phrases by defense counsel overwhelmingly confused the jury is a step too far. Additionally, as to the Fourth Amendment argument that plaintiffs made, the Fourth Amendment simply does not apply to this case. Plaintiffs said in their briefing that they're not objecting to the collection of property by Cook County Jail. And plaintiffs, when defendant's response brief goes into this Fourth Amendment issue and plaintiff's reply brief does not counter the arguments made by defendants regarding the Fourth Amendment issue, and, indeed, on page nine of plaintiff's reply brief, they again seem to revert to the argument that it is a Fourth Amendment case rather than a Fourteenth Amendment case. There's simply no search and seizure going on here. As to the Pembower issue, Pembower deals with the liability of the definition of the entity. And, again, in the jury instructions that were agreed to, the definition of the defendant was the office of the sheriff, which would encompass any of those policymaking officials. Fourth, plaintiffs bring up this issue that the court should have taken judicial notice of the case Black v. Dart. Again, that's not quite applicable. Judicial notice is for facts, not case law. Plaintiffs were not prevented from presenting evidence on what the Cook County Jail told detainees to do once they get out of jail to return their property. They presented a witness, Leon Simansky, who recounted his process of going to court and trying to file a claim against. What was the factual rebuttal to that point from the defendants to the evidence that the sheriff's office was saying, in essence, go down this blind alley to get compensated? I don't know if there was a factual rebuttal to that specific point. That's what the department was doing? I would have to go back and look at the record, but I believe at the time that was what the form stated, Your Honor. So the sheriff was directing people whose property had been lost, the tens of thousands of them, to go down a blind alley and waste their time? Well, Your Honor, the first step would be to come to Cook County Jail, try to make a claim with Cook County Jail. There's evidence in the record that most bags were found when people came and tried to collect it. It was a small number of circumstances where people came to claim their property at Cook County Jail, and the jail could not immediately or within short order collect it. Can you quantify small? I believe there's testimony in the record that one of the people who worked in the property room said that very often all the bags would be found. Can you quantify it? He never recalled a day where as many as ten bags could not be found. And, again, this is plaintiff's burden to quantify the number of bags. Let me go back to my original question about the plaintiff's point that the sheriff's department was directing people whose property was lost to go to a nonexistent court with an incorrectly designated court, and if they managed to find their way there, would be met with county lawyers arguing immunity. Well, Your Honor, the... Is that what was happening? I think to some extent that was what was happening, Your Honor. Why isn't that just outrageous? Your Honor, this goes to the issue of first, there has to be a constitutional violation, and second, no adequate remedy at law. There was an adequate remedy at law in terms of replevin. Where? In the county state court. And what about immunity? Immunity does not go to replevin. Replevin is still an available remedy. So you were directing people to the wrong court and remedy? I don't believe that's correct, Your Honor. I believe there was filing a suit. I don't believe there were directions on what kind of claim to bring. So if they couldn't figure out the difference between a damages claim and a replevin claim, they were out of luck. That's the remedy that you were offering? Well, the remedy was to first come back to Cook County Jail and ask... We're assuming that didn't work. And again, in order to get to the issue of whether or not there's an inadequate remedy at law, you first have to look to whether or not there is a constitutional violation. And again, going back to the analysis and the jury verdict, that there was no deliberate indifference in this case, that the steps that the Cook County Jail was making to ensure detainees got their property in the first instance meant that there was no deliberate indifference, there was no constitutional violation. And then lastly, as to the spoliation instruction, plaintiffs need to establish both that the evidence existed and that it was destroyed and destroyed in bad faith. There is no evidence of destruction or destruction in bad faith. There's the evidence that the database existed while the suit was pending, correct? From the videotape? There is hearsay statements. There's no one... Hearsay by whom? By the individual on the... Agents of the Sheriff's Department? That is correct, Your Honor, but... Within the scope of their work, right? I think that's correct, Your Honor, yes. Okay, so forget the hearsay. There's evidence. Was that during the pendency of the lawsuit? I believe it would have been. Okay, so we have evidence that a database existed during the pendency of the lawsuit, and we have counsel for the county reporting to opposing counsel into the court. It no longer exists. Yes, and going back to the first part of that, while there were references to the existence of the database, no one who actually created the database or witnessed the database testified to it or referenced it. We don't know what those statements were in that video regarding what they were talking about when it came to those statements. And, again, there's no evidence that anything was destroyed in bad faith. And, again, as to the standard to apply here, it's an abuse of discretion standard as to when the judge refuses or gives an instruction or does not give an instruction. And the trial court did not abuse its discretion in failing to find that this database existed or that it was destroyed or destroyed in bad faith. And, again, nevertheless, the court still permitted plaintiffs to argue about this so-called database and what it might have shown had it existed. So plaintiffs were not prejudiced by that fact. And unless there are any further questions, defendants urge the court to affirm the lower court's ruling. Thank you. Certainly, Mr. Power. Anything further, Mr. Laxman? Yes. The sheriff just asked for affirmance by stating that there is no evidence that anything was destroyed in bad faith. If the jury made the same conclusion, and that's what the sheriff urged to the jury in closing argument, they were applying a subjective standard. They were saying, well, there's no bad faith, there's negligence, there's carelessness, there's governmental waste, fraud, and abuse, but there's no bad faith. Nobody wanted these 50,000 prisoners whose bad faith... Mr. Laxman, under the Supreme Court's holding in Daniels, intentional misconduct is an element of any due process claim. So without showing that somebody acted with intent, how can one have a remedy? Consistent with Daniels. Daniels did not address the objective standard for entity liability for a 14th Amendment claim. But it held that a violation of the due process clause requires someone to have bad intent. And as I understand it, you're arguing there can be a violation of the due process clause even though nobody had bad intent. That's correct. That's Canton versus... That's awfully hard to reconcile with the Supreme Court. I would respectfully request the court to make that position clear and maybe we could get it clarified. That's really a reason why the Fourth Amendment is so important in this kind of case. The sheriff is seizing the property, exercising the Fourth Amendment, and they should have a duty to... Yes, the Fourth Amendment standard is objective. But I gather you're conceding you didn't request any Fourth Amendment instruction. That's correct. Was the Fourth Amendment part of the pretrial order? It wasn't part of the... So the Fourth Amendment is just not here, and Daniels says the due process clause is intent-based. That's what's giving me trouble here. You can't make the due process clause just a clone of the Fourth Amendment. Daniels said otherwise. I don't think Daniels was talking about entity liability. I think if we go back to Farmer, where the court was considering should it be objective or subjective, and they said, well, this is an individual, it's subjective. And for municipalities, it's a pure objective standard. For Title IX violations, it's a pure objective standard. This is not a Title IX case. Congress can pass any statute it wants. But on the meaning of the due process clause, we do have to follow the Supreme Court. Well, I would request the court to tee that up for someone else, for other people to look at that issue, which I think is worthy of further consideration. Thank you. Thank you, Mr. Flaxman. The case is taken under advisement.